1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DORU GABRIEL TRIFU,**<br><br>                                    Petitioner,<br><br>          **v.**<br><br>**CRAIG APKER, Administrator,**<br><br>                                    Respondent. | **Case No. 1:15-cv-01114 LJO MJS (HC)**<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

          Petitioner is a federal prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.   Petitioner challenges the implementation and collection of restitution and felony assessments under the Inmate Financial Responsibility Program ("IFRP") by private prison employees.

          First, Plaintiff asserts that the employees of Taft Correctional Institution ("TCI") violated his due process rights based on their lack of authority to set or collect restitution payments through the IFRP program. Second, he asserts that the action of taking his restitution was an abuse of process in light of the language of federal regulations including 28 C.F.R. § 545.10 which limits the authority of the Bureau of Prisons to collect restitution. (Pet. at 3, ECF No. 1.)

1

Petitioner filed his petition on July 20, 2015.  Respondent filed an answer to the Petition on October 5, 2015. (Answer, ECF No. 12.) Petitioner filed a traverse to the answer on October 28, 2015. (Traverse, ECF No. 13.)

## I.    Factual Background

On December 2, 2013, Petitioner was sentenced by the United States District Court, Southern District of Texas, to 96 months in federal custody for Wire Fraud. (Decl. of Dale Patrick ("Patrick Decl."), Ex. A, ECF No. 12-1; United States v. Trifu, Case No. 6:12CR00081-S-001.) In addition to his federal prison sentence, Petitioner was assigned a felony assessment of $3,300.00 and $562,239.78 in restitution. (ECF No. 12-1 at 11.) The schedule of payments stated:

> [C]riminal monetary penalties is due as follows: Lump sum payment of $3,300.00 due immediately, balance due in accordance with F below.
>
> F – Special Instructions regarding payment of criminal monetary penalties: The restitution shall be paid during the term of supervised release at a rate of $300.00 per month, beginning 30 days after placement on supervised release.
>
> Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

(Id., at 17.)

Petitioner arrived in custody at TCI on February 7, 2014. (Patrick Decl., Ex. B.) August 21, 2014, Petitioner signed an Inmate Financial Responsibility Program Inmate Financial Plan contract ("IFRP Contract") to voluntarily participate in the IFRP. (Patrick Decl., Ex. C.) His payment schedule was set at $50 a month.  (Patrick Decl., Exh. G.) On July 23, 2015, Petitioner signed another IFRP Contract reducing his payment schedule to $25 a month. (Id.)

The IFRP Contracts signed by Petitioner contained the following advisement:

> A staff member has provided me with information regarding the potential consequences of refusal on my part to participate in the inmate financial responsibility program. I agree to submit payments toward satisfaction of the financial obligation(s) indicated on the form in accordance with the payment plan outlined below. I agree to have funds

1   automatically withdrawn from my account. I agree to follow this payment
    plan until the financial obligation(s) is satisfied.

2   (Patrick Decl., Ex. C.)

3       Despite entering into the above IFRP Contracts, on August 25, 2014, Petitioner

4   requested that the prison stop deducting money from his account. (Patrick Decl., Ex. D).

5   TCI responded on August 27, 2014, stating that Petitioner's financial obligation was

6   determined based on the IFRP policy, Management and Training Corporation ("MTC")[1]

7   policy 4B2, and Program Statement 5380.08. (Id., Ex. E.)

8       Petitioner next sent a Request for Administrative Remedy, stating that "MTC's

9   employees cannot lawfully use the IRFP to collect payments from me because privately-

10  run prison [MTC] may not schedule or set its own payment plan." (Patrick Decl., Ex. F.)

11  In support of his position, Petitioner cited Ward v. Chavez, 678 F.3d 1042 (9th Cir.

12  2012). (Id.)

13      On September 5, 2014, TCI responded, stating:

14          In Ward v. Chavez, 678 F.3d 1042 (9th Cir. 2012), the Ninth Circuit
        held that where the sentencing court has failed to consider whether the
15      defendant has the financial resources to pay restitution immediately,
        ordering immediate payment impermissibly delegates to the BOP the
16      court's obligation to set a payment schedule. However, it appears you
        have misread your J&C and the Ninth Circuit decision in Ward v. Chavez.
17      Ward v. Chavez dealt specifically with restitution orders and only
        restitution orders. Special assessments (felony assessments), Fines and
18      court costs, and State or local court obligations are not included in the
        Ward v. Chavez ruling. Any court imposed obligation in one or more of the
19      aforementioned areas will be handled by staff in accordance with the
        provisions set forth in Program Statement 5308.08, and TCI Policy 4-B-2.
20

21          Therefore, staff will continue to monitor your progress in meeting
        your court imposed financial obligation with regards to your $3,300.00
22      felony assessment. However, staff will not collect any part of your
        $562,239.78 restitution as the sentencing court specifically set the
23      schedule for payment of the restitution to begin 30 days after placement
        on supervised release in the amount of $300.00 per month.

24          The Ninth Circuit has held that the Bureau of Prison's operation of
        the IFRP does not constitute an unlawful delegation of authority and that
25      an inmate's participation in the IFRP is voluntary even though he may be
        denied certain privileges if he refuses to join the program. See United
26      States v. Lemoine, 546 F.3d 1042, 1046 (9th Cir. 2008).

27

28      _____
            [1] MTC is the private corporation that manages TCI.

3

1    (Patrick Decl., Ex. G.)

2           On March 3, 2015 Petitioner sent a request that his repayment of the $3,300.00

3    Felony Assessment be reviewed. (Patrick Decl., Ex. H.) On March 11, 2015, Warden

4    Craig Apker responded:

5           Records indicate the matter regarding your $3,300 felony assessment was
            appropriately addressed on the response to Administrative Remedy
6           201481-F1 dated September 5, 2014. However, you appear to be
            requesting a review of your $50.00 per month IFRP payment currently
7           being made towards your felony assessment. . .Records indicate your
            next program review is currently scheduled for August 2015. [A]t that time
8           staff will review your IFRP status as required by policy.

9    (Patrick Decl., Ex. I.)

10          Petitioner next filed the instant petition for writ of habeas corpus under 28 U.S.C.

11   § 2241.

12   **II.     Standard of Review**

13          Writ of habeas corpus relief extends to a person in custody under the authority of

14   the United States. See 28 U.S.C. § 2241.  Writ of habeas corpus relief is available if a

15   federal prisoner can show he is "in custody in violation of the Constitution or laws or

16   treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner's claims are proper

17   under 28 U.S.C. § 2241 and not 28 U.S.C. § 2255 because they concern the manner,

18   location, or conditions of the execution of Petitioner's sentence and not the fact of

19   Petitioner's conviction or sentence. Tucker v. Carlson, 925 F.2d 330, 331 (9th Cir.1990)

20   (stating that a challenge to the execution of a sentence is "maintainable only in a petition

21   for habeas corpus filed pursuant to 28 U.S.C. § 2241"); Montano-Figueroa v. Crabtree,

22   162 F.3d 548, 549 (9th Cir. 1998).

23          Further, Petitioner is challenging the execution of his sentence at Taft

24   Correctional Institution in Taft, California, which is within the Fresno Division of the

25   Eastern District of California; therefore, the Court has jurisdiction over this petition. See

26   Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).

27

28

III.     **Review of the Petition**

      A.     **Exhaustion of Administrative Remedies**

"As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045-1046 (9th Cir. 2012). The exhaustion requirement in § 2241 cases is not required by statute nor is a "jurisdictional" prerequisite. It is a prudential limit on jurisdiction and can be waived "if pursuing those [administrative] remedies would be futile." Id.; Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001), abrogated on other grounds, Fernandez-Vargas v. Gonzales, 548 U.S. 30 (2006); Fraley v. U.S. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993).

Here, Petitioner filed administrative appeals regarding his challenges to the use of the IFRP to allow a private prison to collect payments. It appears, however, that any administrative appeal would have been futile since the outcome, denial, was predetermined based on a BOP policy memorandum regarding the application of the IFRP program in federal prisons. (Patrick Decl., Ex. J, BOP Program Statement P5380.08.) However, the policy does not address the authority of the BOP under the regulations to delegate the authority to TCI to implement the IFRP. In addition, the decision by the warden of TCI to reject Petitioner's administrative appeal did not address Petitioner's arguments regarding whether private prison employees had authority to implement the IFRP.

Prior attempts to challenge aspects of the IFRP have been found futile by the Ninth Circuit where the actions complained of were based on reliance on BOP memorandum. Ward, 678 F.3d at 1045-1046 (citing, as examples, Fraley, 1 F.3d at 925; Sours v. Chavez, No. 2:08-cv-01903-SRB, Dkt. No. 22, 2009 U.S. Dist. LEXIS 76743 at *2 (D. Ariz. June 17, 2009)). In light of the futility of pursuing administrative remedies, and the fact that Respondent has not asserted a defense based on Petitioner's lack of exhaustion, the exhaustion requirement is waived, and the Court shall review the merits of the petition.

1

**B.      Authority of Private Prison Staff to Implement IFRP Orders**

2        Petitioner asserts that staff at TCI lacked authority to collect restitution payments

3   as they were not employees of the BOP as required by applicable Federal Regulations.

4   Petitioner relies on relevant Federal Regulations (28 C.F.R. §§ 500.1, 545.10-11) and an

5   unpublished Ninth Circuit case in which a staff member at the same private correctional

6   facility was found to lack authority to administer prison discipline as he was not an

7   employee of the BOP. See Arredondo-Virula v. Adler, 510 Fed. Appx. 581, 582 (9th Cir.

8   2013). In Arredondo, the Ninth Circuit held:

9
10             Logan was not an employee of the Bureau of Prisons (the B.O.P.)
          or Federal Prison Industries, Inc.  as required by the applicable regulation
          in place at the time. 28 C.F.R § 541.10(b)(1) (2010). The regulation
11        provided: "only institution staff may take disciplinary action." Staff was
          defined as "any employee of the Bureau of Prisons or Federal Prison
          Industries, Inc." 28 C.F.R. § 500.1(b). We note that 28 C.F.R §
12        541.10(b)(1) is no longer in force.

13             [Respondent] concedes that Logan was not an employee of the
          B.O.P. or Federal Prison Industries, Inc.  At oral argument, his counsel
14        suggested that Logan was "an officer". He was not an officer of the B.O.P.

15             A significant difference exists between employees and independent
          contractors. Minneci v. Pollard, 132 S. Ct. 617, 623, 181 L. Ed. 2d 606
16        (2012) (federal inmates have no federal Bivens cause of action for
          damages against privately-run prison workers because these workers are
17        not federal employees), see also Allied Chem. & Akali Workers of Amer.,
          Local Union No. 1 v. Pittsburgh Plate Glass Co. et al., 404 U.S. 157, 167,
18        92 S. Ct. 383, 30 L. Ed. 2d 341 (1971). Under the plain meaning of the
          law, [the DHO] was not authorized to discipline [Petitioner].
19
20   Arredondo-Virula, 510 Fed. Appx. at 582.

21        In this case, Petitioner challenges the authority of staff of the same private

22   correctional institution to collect restitution and felony assessment penalties under a

23   similar federal regulation that likewise defines staff as BOP employees.

**1.      Regulatory Framework for Payments Under the IFRP**

24
25        The Inmate Financial Responsibility Program applies to nearly all post-trial

26   inmates in federal facilities. 28 C.F.R. § 545.10. The purpose of the program is to

27   encourage inmates to meet their "legitimate financial obligations." See 28 C.F.R. §

28   545.10; United States v. Lemoine, 546 F.3d 1042, 1046 (9th Cir. 2008). The regulations

describe the implementation of the program:

> As part of the initial classification process, *staff* will assist the inmate in developing a financial plan for meeting those obligations, and at subsequent program reviews, *staff* shall consider the inmate's efforts to fulfill those obligations as indicative of that individual's acceptance and demonstrated level of responsibility. The provisions of this rule apply to all inmates in federal facilities, except: Study and observation cases, pretrial detainees, and inmates in holdover status pending designation.

28 C.F.R. § 545.10 (emphasis added).

28 C.F.R. § 545.11 describes the procedures for implementing the IFRP. It states that "When an inmate has a financial obligation, unit *staff* shall help that inmate develop a financial plan and shall monitor the inmate's progress in meeting that obligation." Id.; Lemoine, 546 F.3d at 1047 (emphasis added).

The IFRP is a voluntary program and inmates may choose not to participate but the failure to participate in or to comply with a financial plan carries the following possible consequences:

> (d) Effects of non-participation. Refusal by an inmate to participate in the financial responsibility program or to comply with the provisions of his financial plan ordinarily shall result in the following:
>
> > (1) Where applicable, the Parole Commission will be notified of the inmate's failure to participate;
> >
> > (2) The inmate will not receive any furlough (other than possibly an emergency or medical furlough);
> >
> > (3) The inmate will not receive performance pay above the maintenance pay level, or bonus pay, or vacation pay;
> >
> > (4) The inmate will not be assigned to any work detail outside the secure perimeter of the facility;
> >
> > (5) The inmate will not be placed in UNICOR. Any inmate assigned to UNICOR who fails to make adequate progress on his/her financial plan will be removed from UNICOR, and once removed, may not be placed on a UNICOR waiting list for six months. Any exceptions to this require approval of the Warden;
> >
> > (6) The inmate shall be subject to a monthly commissary spending limitation more stringent than the monthly commissary spending limitation set for all inmates. This more stringent commissary spending limitation for IFRP refusees shall be at least $ 25 per month, excluding purchases of stamps, telephone credits, and, if the inmate is a common fare participant, Kosher/Halal certified shelf-stable entrees to the extent that such purchases are allowable

7

under pertinent Bureau regulations;

(7) The inmate will be quartered in the lowest housing status (dormitory, double bunking, etc.);

(8) The inmate will not be placed in a community-based program;

(9) The inmate will not receive a release gratuity unless approved by the Warden;

(10) [Reserved]

(11) The inmate will not receive an incentive for participation in residential drug treatment programs.

28 C.F.R. § 545.10(d); Lemoine, 546 F.3d at 1047.

## 2.    Authority of Private Prison Staff to Implement the IFRP

TCI is a federal facility operated by the private corporation, Management and Training Corporation. See Edison v. United States, 2013 U.S. Dist. LEXIS 128503, 2013 WL 4828579, at *1 (E.D. Cal. Sept. 9, 2013) ["Taft Correctional Institution is a government-owned, contractor-operated facility for federal inmates."] [2] Petitioner contends that the regulations, as stated, only allow BOP staff to administer the IFRP program. Accordingly, Petitioner asserts that TCI staff - i.e., employees of Management and Training Corporation - lacked the authority to administer the IFRP. (See generally Pet. and Traverse, ECF Nos. 1, 13.)

Respondent does not dispute, and therefore concedes, that Taft is a private prison and that the staff who implemented Petitioner's IFRP assessment were not BOP employees. However, Respondent contends that the implementation of the IFRP program was authorized.  Respondent relies on United States v. Lemoine, in which the Ninth Circuit upheld the constitutionality of the IFRP. 546 F.3d at 1050. The Court in Lemonie stated that, "where the district court has properly set a restitution repayment schedule as required under the [Mandatory Victims Restitution Act], the BOP has the

---

[2] Likewise, the BOP identifies TCI as "A contracted correctional institution, operated by a private corporation." https://www.bop.gov/locations/ci/taf/. Court may take judicial notice of facts that are subject to ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993). Further, Respondent has not challenged Petitioner's assertion that TCI is a privately-run correctional institution.

authority to encourage voluntary payments in excess of those required under the court's judgment by conditioning the receipt of certain privileges during the term of imprisonment on the inmate's participation in the IFRP. Id. While Lemonie indicates that the IFRP is constitutional, it does not address Petitioner's contentions that employees of TCI lacked authority to implement the program.

Next, Respondent relies on a BOP memorandum issued on August 15, 2015, providing guidance on how to implement the IFRP, and a MTC memo dated on July 17, 2008 describing guidelines and procedures for TCI staff to implement the IFRP program. (Patrick Decl., Ex. J, K.) The BOP memorandum contains no language discussing or expanding the definition of "staff." (Patrick Decl., Ex. J.) However the MTC memo defines "Unit Team/Staff" as: "The Classification Team for the purpose of this policy indicates membership consisting of a Counselor, Case Manager, and Unit Manager." (Patrick Decl., Ex. K.)

### 3. Legal Standard for Review and Application of Federal Regulations

To resolve the present claims of Petitioner, the Court must interpret the meaning of the regulations and determine whether the regulations limit who may administer the IFRP. The standards for review and application of federal regulations are well established under federal law.

With respect to interpretation of federal regulations, the agency's interpretation is provided deference. "It is well established that an agency's interpretation need not be the only possible reading of a regulation--or even the best one--to prevail." Decker v. Northwest Envtl. Def. Ctr., 133 S. Ct. 1326, 1337 (2013). Under Auer v. Robbins and Seminole Rock, a court will defer to an agency's interpretation of its regulations, "even in a legal brief, unless the interpretation is plainly erroneous or inconsistent with the regulations or there is any other reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." Talk Am., Inc. v. Mich. Bell Tel. Co., 131 S. Ct. 2254, 2260-2261 (2011) (citation omitted); Chase Bank

1  USA, N. A. v. McCoy, 131 S. Ct. 871, 881 (2011); Auer v. Robbins, 519 U.S. 452, 461

2  (1997); Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 411 (1945); Indep. Training

3  & Apprenticeship Program v. Cal. Dep't of Indus. Rels., 730 F.3d 1024, 2013 U.S. App.

4  LEXIS 19255 (9th Cir. 2013). "This is generally called Seminole Rock or Auer

5  deference." Decker, 133 S. Ct. at 1339 (Scalia, J., dissenting.) Justice Scalia

6  summarized Auer deference as follows:

7          In practice, Auer deference is Chevron deference applied to
8      regulations rather than statutes. See Chevron U. S. A. Inc. v. Natural
       Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L.
9      Ed. 2d 694 (1984). The agency's interpretation will be accepted if, though
       not the fairest reading of the regulation, it is a plausible reading--within the
10     scope of the ambiguity that the regulation contains.

11 Id. at 1339-1340.

12         With respect to the inquiry whether the interpretation does not reflect the agency's

13 fair and considered judgment on the matter in question, "[i]ndicia of inadequate

14 consideration include conflicts between the agency's current and previous

15 interpretations; signs that the agency's interpretation amounts to no more than a

16 convenient litigating position; or an appearance that the agency's interpretation is no

17 more than a post hoc rationalization advanced by an agency seeking to defend past

18 agency action against attack." Price v. Stevedoring Servs. of Am., Inc., 697 F.3d 820,

19 830 n.4 (9th Cir. 2012) (en banc)) (citing Bowen v. Georgetown Univ. Hosp., 488 U.S.

20 204, 213 (1988) and Auer, 519 U.S. at 462).

21         Where a court declines to give an interpretation Auer deference, it accords the

22 agency's "interpretation a measure of deference proportional to the 'thoroughness

23 evident in its consideration, the validity of its reasoning, its consistency with earlier and

24 later pronouncements, and all those factors which give it power to persuade.'"

25 Christopher v. SmithKline Beecham Corp., 132 S. Ct. 2156, 2169 (2012) (quoting United

26 States v. Mead Corp., 533 U.S. 218, 228 (2001)); Indep. Training & Apprenticeship

27 Program, 2013 U.S. App. LEXIS 19255 at *27. This amount of consideration will "vary

28 with circumstances" and may be "near indifference," such as has been given in some

cases when considering an "interpretation advanced for the first time in a litigation brief." <u>Mead</u>, 533 U.S. at 228 (citing <u>Bowen</u>, 488 U.S. at 212-13).

With respect to the application of federal regulations generally, the government is bound by the regulations it imposes on itself. <u>United States v. 1996 Freightliner FLD Tractor</u>, 634 F.3d 1113, 1116 (9th Cir. 2011); (citing <u>United States ex rel. Accardi v. Shaughnessy</u>, 347 U.S. 260, 265 (1954)). "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required." <u>Morton v. Ruiz</u>, 415 U.S. 199, 235 (1974); <u>Alcaraz v. INS</u>, 384 F.3d 1150, 1162 (9th Cir. 2004).

Having chosen to promulgate a regulation, the agency must follow that regulation. <u>Nat'l Ass'n of Home Builders v. Norton</u>, 340 F.3d 835, 852 (9th Cir. 2003). The Ninth Circuit explained the rational for the <u>Accardi</u> principle:

> An agency's failure to follow its own regulations "tends to cause unjust discrimination and deny adequate notice" and consequently may result in a violation of an individual's constitutional right to due process. <u>NLRB v. Welcome-American Fertilizer Co.</u>, 443 F.2d 19, 20 (9th Cir. 1971); <u>see also United States v. Newell</u>, 578 F.2d 827, 834 (9th Cir. 1978). Where a prescribed procedure is intended to protect the interests of a party before the agency, "even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed." <u>Vitarelli</u>, 359 U.S. at 547 (Frankfurter, J., concurring); <u>see also Note, Violations by Agencies of Their Own Regulations</u>, 87 Harv. L. Rev. 629, 630 (1974) (observing that agency violations of regulations promulgated to provide parties with procedural safeguards generally have been invalidated by courts).

<u>Sameena Inc. v. United States Air Force</u>, 147 F.3d 1148, 1153 (9th Cir. 1998).

### 5.    Analysis

#### a.    Interpretation of the Regulations

Petitioner argues that the regulations only allow BOP employees to implement the IFRP. <u>See</u> 28 C.F.R. §§ 500.1(b), 545.10-11. The Court agrees. Sections 541.10 and 541.11 allow staff to develop inmates' financial plans for meeting financial obligations. As defined by section 500.1, "staff" is any employee of the Bureau of Prisons or Federal Prison Industries, Inc." The plain language of the regulations state that only BOP staff

1   may develop financial plans under the IFRP. The regulations clearly define the term

2   "staff," as employees of the BOP. Respondent has presented no argument as to why

3   employees of TCI would have authority in light of the clear language of the regulations

4   limiting the scope of the term 'staff.'

5       Neither the express nor implied language of the regulations allows non-BOP staff

6   to administer the IFRP. Respondent has presented no argument that TCI employees

7   somehow are defined as BOP staff or that the definition is otherwise ambiguous.

8   Respondent's election not to claim the regulatory language is ambiguous renders it

9   inappropriate to invoke Auer deference to its interpretation. See Tibble v. Edison Int'l,

10  711 F.3d 1061, 1072 n.8 (9th Cir. 2013) (ambiguity in the regulation needs to be shown

11  to invoke Auer deference.) (citing Gonzales v. Oregon, 546 U.S. 243, 255 (2006).

12  Respondent presents no argument as to why staff should be defined in a different

13  manner than as expressly described in the regulations, or how the phrase "staff will

14  assist the inmate in developing a financial plan" is ambiguous and open to interpretation.

15      Because the Court finds that the text of the regulation is not ambiguous and

16  Respondent presents no argument otherwise, the Court "does not grant deference to

17  [Respondent's] views apart from their inherent ability to persuade." Schwab v. Comm'r,

18  715 F.3d 1169, 1176 (9th Cir. 2013); Christopher, 132 S. Ct. at 2169. As Auer deference

19  does not apply to Respondent's interpretation of the regulations, the Court "must employ

20  traditional tools of interpretation" in reviewing the language of the governing statute and

21  regulations to determine their meaning. Christopher, 132 S. Ct. at 2170. Congress

22  provided broad authority to the BOP to manage correctional institutions. See 18 U.S.C. §

23  4042(a). It is possible that the statutory grant of authority by Congress would allow the

24  BOP to delegate the authority to administer the collection of restitution and assessments

25  to private contractors. See  Chevron, U.S.A., Inc., 467 U.S. at 844. However, the statute

26  is silent regarding any delegation, and is of little assistance in interpreting the language

27  of the regulations promulgated by the BOP, which are more detailed and onerous than

28  the statute. See Alcaraz v. INS, 384 F.3d at 1162.

1   The regulations clearly define the definition of staff: "Staff means any employee of
2   the Bureau of Prisons or Federal Prison Industries, Inc." 28 C.F.R. § 500.1(b). Under
3   rules of statutory construction, "we must follow that definition, even if it varies from that
4   term's ordinary meaning." Stenberg v. Carhart, 530 U.S. 914, 942 (2000). The regulation
5   states what the term staff means, and "[a]s a rule, 'a definition which declares what a
6   term "means" . . . excludes any meaning that is not stated." Id. (citing Colautti v. Franklin,
7   439 U.S. 379, 392-393, n. 10 (1979).

8   The regulations further explain that Bureau staff will review an inmate's financial
9   obligations, develop a financial plan for the inmate, and monitor the inmate's progress in
10  meeting the financial obligations. See 28 C.F.R. §§ 545.10; 541.11. Nothing in the
11  regulations address the application of the IFRP to inmates in private correctional
12  institutions or delegating the authority of implementing IFRP plans to private prison
13  employees. The policies set forth in the BOP memorandum and MTC guidance
14  memorandum fail to address the issue whether TCI employees, rather than Bureau
15  employees, have authority to implement the IFRP. As Respondent has not addressed
16  basic issues such as interpretation of the language of the regulation, Respondent's
17  interpretation, while considered, is of little weight. Christopher 132 S. Ct. at 2169; Mead,
18  533 U.S. at 228.

19  The Court finds that the regulations require Bureau staff implement the IFRP. See
20  28 C.F.R. §§ 500.1, 545.10, 545.11. The referenced sections of the regulations, when
21  read together, are unambiguous. Adopting a contrary interpretation would "permit the
22  agency, under the guise of interpreting a regulation, to create de facto a new regulation."
23  Chase Bank USA, N.A. v. McCoy, 131 S. Ct. 871, 882 (2011); Christensen, 529 U.S. at
24  588. Such an alternative interpretation would be "plainly erroneous or inconsistent" with
25  the regulation and not entitled to Auer deference. Id. As Respondent's conduct was not
26  authorized, Petitioner is entitled to habeas corpus relief.

27  While not raised by Respondent, the Court does not foresee major administrative
28  hurdles in requiring Bureau staff to implement and administer the IFRP as required by

13

1   federal regulations. While the regulations require Bureau staff to assist inmates in
2   developing financial plans and monitoring inmates' progress, nothing in the regulations
3   preclude Bureau staff from implementing the program remotely. The findings of this
4   Court should have little impact on the BOP's efforts to collect restitution and criminal
5   assessments from inmates held at private correctional institutions.

6   **IV.    Petitioner's Motion for Injunctive Relief**

7          On November 13, 2015, Petitioner filed a motion for injunctive relief based on the
8   claims in the petition. (Mot., ECF No. 14.) Respondent filed an opposition to the motion
9   on December 7, 2015, and Petitioner filed a reply on December 21, 2016. (ECF Nos. 15-
10  16.) Having found Petitioner's claims meritorious, the Court grants Petitioner's request
11  for injunctive relief.

12  **V.     Recommended Relief**

13         It is well established that federal district courts have broad discretion in
14  conditioning a judgment granting habeas relief. Hilton v. Braunskill, 481 U.S. 770, 775
15  (1987). Pursuant to 28 U.S.C. § 2243, federal courts are authorized to dispose of
16  habeas corpus matters "as law and justice require." "In modern practice, courts employ a
17  conditional order of release in appropriate circumstances, which orders the
18  [Government] to release the petitioner unless the [Government] takes some remedial
19  action, such as to retry (or resentence) the petitioner." Harvest v. Castro, 531 F.3d 737,
20  741-742 (9th Cir. 2008) (citing Wilkinson v. Dotson, 544 U.S. 74, 89 (2005) (Kennedy, J.,
21  dissenting); Herrera v. Collins, 506 U.S. 390, 403 (1993); Hilton v. Braunskill, 481 U.S. at
22  775 ("[T]his Court has repeatedly stated that federal courts may delay the release of a
23  successful habeas petitioner in order to provide the State an opportunity to correct the
24  constitutional violation found by the court."); In re Bonner, 151 U.S. 242, 259-60 (1894)).

25         Accordingly the Court recommends that Petitioner's IFRP Inmate Financial Plan
26  contract be rescinded and Respondent shall provide Petitioner a new IFRP Inmate
27  Financial Plan contract prepared by Bureau staff within sixty (60) days of the adoption of
28  the instant Findings and Recommendation by the District Court Judge.

**VI.    Conclusion and Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that the Court finds that Petitioner is entitled to relief and that Petitioner's IFRP Inmate Financial Plan contract be rescinded and Respondent shall provide Petitioner a new IFRP Inmate Financial Plan contract prepared by Bureau staff within sixty (60) days.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1) and Local Rule 304. Within fourteen (14) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   March 21, 2017          /s/ *Michael J. Seng*
                                 UNITED STATES MAGISTRATE JUDGE

15